**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| _____ )<br><br>BENEFICIAL INNOVATIONS, INC.,     )<br>            )<br>        Plaintiff,     )<br>            )<br>        v.        )<br>            )<br>BLOCKDOT, INC., *et al.*,     )<br>            )<br>        Defendants.     )<br>_____) | Civil Action No.: 2:07-cv-263 (TJW/CE) |
| _____ )<br><br>BENEFICIAL INNOVATIONS, INC.,     )<br>            )<br>        Plaintiff,     )<br>            )<br>        v.        )<br>            )<br>AOL. LLC, *et al.*,     )<br>            )<br>        Defendants.     )<br>_____) | Civil Action No. 2:07-cv-555 (TJW/CE) |

**THE NEW YORK TIMES' MOTION TO STRIKE**
**PLAINTIFF'S SUPPLEMENTAL AND SECOND**
**SUPPLEMENTAL EXPERT REPORTS**

On the afternoon before his October 26, 2010 deposition, Plaintiff's technical expert, Dr. Kevin Almeroth, submitted a "Supplemental" expert report asserting an infringement theory that had not been included in either his opening infringement report or in Plaintiff's infringement disclosures.  Ex. 1.  Then, on November 9, 2010, after all of the technical expert depositions in this case had been completed, Dr. Almeroth submitted a "Second Supplemental Expert Report," which he states is in response to this Court's October 27, 2010 ruling denying Plaintiff's motion for clarification of the Court's construction of "unrequested."  Ex. 2.  In that one-page report, Dr. Almeroth adopts as his sole theory for contending that the New York Times serves "unrequested" ads the new  infringement theory that Plaintiff had disclosed for the first time in its untimely

Supplemental Expert Report.  Despite the fact that these reports were not submitted in compliance

with the deadlines for submitting expert reports in this case and that the inclusion of this new

infringement theory in the reports is an effort to amend Plaintiff's infringement contentions,

Plaintiff did not seek consent from the New York Times for making these submissions and did not

seek leave of this Court to do so.

In these Supplemental Reports, Plaintiff makes yet another attempt to twist the plain

meaning of this Court's construction of the claim term "unrequested" in an effort to create an

infringement theory.   Plaintiff jettisons the theory that it had asserted throughout the briefing on:

(a) Defendants' motion for reconsideration of the Court's construction of "unrequested" (which this

Court granted on June 3, 2010); (b) Plaintiff's motion for "clarification" of that claim construction

(which this Court denied on October 27, 2010); and (c) The New York Times' motion for summary

judgment of non-infringement (which is fully briefed).  Throughout that extensive briefing, Plaintiff

asserted that it was critical that the term "unrequested" be construed to mean that the user was not

specifically requesting the advertisement and that when a user sent user input seeking an entire

webpage without indicating an interest in the advertisement that would accompany the webpage, the

advertisements sent would be "unrequested."  See Plaintiff Beneficial Innovations' Opposition to

Defendants' Motion for Summary Judgment on Non-Infringement re: Claim 1 of the '366 Patent (#

284) at 11-13 (arguing that ads are unrequested because the advertisements are not specifically

requested by the user).

Now that this theory has been rejected by this Court not once, but twice, Plaintiff has

submitted a "supplemental" expert report, contending that this Court's ruling on the meaning of

unrequested does not matter at all.  See Ex. 2 at 1 (the Court's ruling "does not alter my analysis

and, therefore, does not alter my conclusions").  Instead, Plaintiff proposes a new theory: that this

Court's ruling that an "unrequested" ad must be one that is "not in response to any immediate

previous input by the user" should be construed to mean that an ad is unrequested if the particular

ad sent to that particular user is selected based on criteria other than information included in the

immediate previous user input.  Ex. 1 at 2-5; Ex. 2 at 1.  Under this new theory, Plaintiff asserts that

an advertisement that is sent in combination with a webpage that the user requested by, for example,

clicking on the link for a particular article would be "not in response to any immediate previous

input by the user" if the advertisement was selected in part based on information from a database

such as the user's age or gender.  This attempt to change what "not in response to any immediate

previous input by the user" means is contrary to this Court's claim construction ruling and the New

York Times is prepared to establish that this new theory does not support a claim of infringement

against it.

<u>However, the New York Times should not be put through having to do so here because
Plaintiff has no right to assert new infringement theories at this late stage of the case in an effort to
avoid the impact of the Court's claim construction rulings.</u>

Both "supplemental" reports should be stricken (and Plaintiff barred from relying at trial on

the opinions expressed for the first time in those reports) because:  (1) the reports fail to comply

with this Court's rules and procedures concerning the disclosure of infringement contentions and

expert opinions; (2) Plaintiff failed to seek leave from this Court and has no good cause for

changing its infringement theory; and (3) allowing Plaintiff to proffer new infringement theories at

this late stage of the litigation would be prejudicial to the New York Times.

## FACTUAL BACKGROUND

Plaintiffs' original infringement contentions were served on July 18, 2008.  Plaintiff served

amended contentions on September 10, 2008 and on April 22, 2010.  On June 3, 2010, in response

to the New York Times' motion for reconsideration, this Court revised its construction of the claim

term "unrequested" in light of representations made by Plaintiff to the Patent and Trademark Office.

This Court held that an advertisement is "unrequested" if it is "not in response to any immediate previous input by the user."  Plaintiff did not seek to amend its infringement contentions in light of that change in this Court's claim construction.  Plaintiff did, however, file a motion for "clarification" asking that the Court rule that "not in response to any immediate previous input by the user" be construed to mean not in response to a "specific request by the user for the advertisement."  This Court denied Plaintiff's motion on October 27, 2010.

Initial expert reports, including Plaintiff's expert report on infringement by Dr. Almeroth, were exchanged on September 1, 2010, pursuant to this Court's Docket Control Order.  Rebuttal reports, including the New York Times' non-infringement report by Dr. Bestavros, were exchanged on October 8, 2010.  There is no provision in this Court's Docket Control Order for any additional rounds of expert reports.

The parties agreed that the New York Times would take the deposition of Dr. Almeroth on October 26, 2010 in Los Angeles.  At 4:07 p.m. on October 25, 2010, Plaintiff's counsel emailed a "supplemental" expert report from Dr. Almeroth to counsel for the New York Times.  See Ex. 3. Plaintiff's counsel had never indicated prior to sending the report that Dr. Almeroth intended to submit a supplemental report.  Counsel for the New York Times was already en route from Washington, D.C. to California when the "supplemental" report was sent and, therefore, could not print and review it until the late evening before the deposition.  Then on November 9, 2010, Plaintiff served a "Second Supplemental Expert Report of Dr. Kevin Almeroth referring back to the new infringement theory advanced in the supplemental report.  See Ex. 2.  Although this Court's patent rules require that amendments to infringement contentions be made only for good cause shown, see Local Patent Rule 3-6(b), on neither occasion did Plaintiff seek leave from this Court or show that it had good cause for adding a new infringement theory.

## ARGUMENT

I.     **Plaintiff Seeks Through The Supplemental Reports To Assert A Previously Undisclosed Infringement Theory And Has No Good Cause For Doing So.**

Dr. Almeroth's opening infringement report in this case expressly relied upon the construction of "unrequested" that Plaintiff asked this Court to adopt in its Motion for Clarification. See Ex. 4 at 175 ("for purpose [*sic*] of this report, I am interpreting the phrase "input by the user" in the Court's construction to mean "specific request by the user for the advertisement"). Based on this construction, Dr. Almeroth asserted that the New York Times infringes Claim 1 of the '366 patent because the user's request for a webpage through either entering a URL or clicking on a hyperlink did not constitute a specific request by the user for the advertisement and therefore is "unrequested." Id. at 177. This Court specifically rejected this construction of the term "unrequested" in its Order of October 27, 2010 denying Plaintiff's Motion for Clarification.

In his supplemental expert report, Dr. Almeroth adopts a new theory of how the New York Times delivers ads that are "unrequested" – a theory that had never been disclosed by Plaintiff in discovery.[1] Dr. Almeroth opines in the belated supplemental expert report for the first time that Claim 1 of the '366 patent requires that to be "unrequested," ads must be selected for a user based on some criteria other than the information contained in the user's immediately prior user input. See Ex. 1 at 2-3; Ex. 2 at 1. In other words, under Dr. Almeroth's new infringement opinion, if the particular ad selected for a particular user is not selected based on information included in the user's input immediately before the ad is served, that ad is not "in response to immediately previous user

---

[1]     Dr. Almeroth's Supplemental Expert Report also includes untimely additional expert opinions on other issues, including specifically opinions about the New York Times' use of targeted ads, the "combiner" element of the claim and opinions concerning non-infringing alternatives. These new opinions are also untimely and unless Plaintiff receives leave of this Court based on good cause, Plaintiff should also be barred from relying on any expert opinions on these issues that are not set forth in the original expert reports.

input" and, therefore, is "unrequested."[2]  This new theory is yet another attempt by Plaintiff to evade the impact of the Court's claim construction and the fact that under the Court's claim construction, the New York Times does not serve ads that are "unrequested."

With Plaintiff's new proposal regarding the meaning of "unrequested," Plaintiff, once again, is taking a claim construction position in this litigation that contradicts directly the claim construction position Plaintiff took in the reexamination of U.S. Patent No. 6,183,366 ("the '366 patent reexamination").  For this additional reason, this Court should strike Plaintiff's supplemental infringement reports.

In the '366 patent reexamination, the Examiner had rejected Claim 1 (the only claim of the '366 patent being asserted against the New York Times) over an article published in Internet Week that described a prior art search engine operated by InfoSeek.  Ex. 5 at 2, 3.  Internet Week described the InfoSeek search engine, stating:

> The most powerful tool InfoSeek offers advertisers is the ability to 'buy' five key words.  If a visitor uses the search engine to look for any of those words, the advertiser's message will automatically appear on the top of the screen when the service provides links to the requested information.  Otherwise, advertisers' messages rotate, ensuring that each message is seen an equal number of times (although by different visitors).

Ex. 6 at 2.  That is, when the consumer inputs a search query, the InfoSeek search engine returns both the search results and a banner advertisement.

The banner advertisement that is returned may be one of two types: (1) a banner ad selected based on the keyword input by the user *or* (2) a banner ad selected using something other than the input by the user.  Plaintiff does not dispute this and admits in its expert report that "InfoSeek

---

[2]     Under Plaintiff's new infringement theory, the New York Times would have a non-infringement defense based on the way that the New York Times selects its targeted ads for users.  In particular, the targeting of ads that is done by the New York Times based on user criteria involves the use of the user information contained in the user's request ("user input") that is sent immediately before the webpage containing the advertisement is returned to the user.  This non-infringement defense would not have been applicable under any of Plaintiff's previously disclosed infringement theories.  Should Plaintiff be permitted to assert this new infringement theory, the New York Times would assert this new defense.

discloses the presentation of two types of ads . . . The first type . . . is an ad that is selected in response to a particular user's search request. . . . The second type of ad . . . is an ad that is *not selected at all for . . . a user's request.*" Ex. 7 at 80-81 (emphasis added).  Plaintiff refers to this second type of ad as a "regular banner ad."  Id. at 81.

Faced with this same prior art, Plaintiff told the PTO that *none* of the banner advertisements delivered by the InfoSeek search engine are "unrequested" (*i.e.*, *all* of the banner ads are "requested").  Specifically, Plaintiff took the position that "[t]here is no teaching of providing 'unrequested' advertising (e.g., advertising that just appears and is not in response to any immediately previous user input, e.g., a pop-up ad.  All that is stated in the Internet Week reference is that ads should be changed, e.g., at least once a week, or 'to cycle them evenly through a week.'  This is clearly not presenting an unrequested advertisement."  Ex. 8 at 32.  Thus, there can be no dispute that, in the reexamination, Plaintiff took the position that *both types of ads* (*i.e.*, the "regular banner ads" and the ads selected based on the user input) are not "unrequested" (*i.e.*, requested).

Now, however, Plaintiff's new infringement theory rests on a construction of "unrequested" that contradicts directly the position it took during the reexamination.  Under Plaintiff's new infringement theory, an ad is requested if, and only if, the ad is selected based on the input by the user.  Under this theory, the "regular banner ads" disclosed in Internet Week are *"unrequested"* because they are not selected based on the input by the user.  But, as shown above, during reexamination Plaintiff took the exact opposite position in order to preserve the validity of its patent, and argued that the "regular banner ads" are *not "unrequested."*

It is much too late in the litigation for Plaintiff to be changing its view of what constitutes infringement of Claim 1 of the '366 patent.  The parties are drafting dispositive motions and trial is less than 90 days away.  Plaintiff chose in this case to argue a particular infringement theory and particular construction of the claim term "unrequested."  This Court has now determined – and

confirmed in rejecting Plaintiff's motion for clarification – that Plaintiff's proposed construction of

"unrequested" is not correct.  Under this Court's Local Patent Rules, Plaintiff had the clear

obligation to disclose the infringement theories it intends to pursue at trial in both its infringement

contentions and in the opening round of expert reports and cannot wait until after all the expert

reports are exchanged to decide on its infringement theory.  See Saffron v. Johnson & Johnson, U.S.

Dist. LEXIS 19615, *3-4 (E.D. Tex. 2009).

        In an effort to justify the submission of a supplemental expert report with a new

infringement theory that is not contemplated by this Court's Local Patent Rules and orders

governing this case, Plaintiff suggests that its supplemental opinions are in response to arguments

made by the New York Times' non-infringement expert Dr. Bestavros.  See Ex. 1 at 2.  This is

demonstrably incorrect.  Nothing in Dr. Bestavros' report could cause Plaintiff to adopt this new

infringement theory in response.  Dr. Bestavros disagreed with Dr. Almeroth's initial infringement

opinion – that the New York Times infringed because its ads were sent not in response to a specific

request for the advertisement – by asserting that the New York Times did not infringe because the

ads were sent in response to immediately prior user input, and no specific request for advertisement

is required by the claim as construed by this Court.  Ex. 9 at 47-49.  Not only is this not a new non-

infringement theory, it is the subject of the New York Times' pending, fully-briefed summary

judgment motion.  Indeed, it is plain that Plaintiff had not adopted this theory earlier because it

failed to raise this issue even in opposing the New York Times' Motion for Summary Judgment of

Non-Infringement.  See Plaintiff's Opposition (# 284) at 11-14..

        Dr. Almeroth's supplemental report does not defend his original infringement opinion

against Dr. Bestavros – based on the construction of "unrequested" Plaintiff was pressing in the

motion for clarification – but instead takes over three single-spaced pages to develop a new

infringement theory based not on whether there is a specific request for an advertisement but now

for the first time on what role the user input plays in selecting the particular ad for the user.  See Ex.

1 at 2-3.  As discussed above, Dr. Almeroth's theory is another effort to construct a new

infringement theory based on changing this Court's claim construction and has nothing to do with

responding to Dr. Bestavros' non-infringement opinions.

Plaintiff has no good cause for seeking to assert new infringement contentions through the

vehicle of an unscheduled supplemental expert report.  The fact that Plaintiff may have realized that

its original infringement theories are no longer viable does not constitute good cause.  See

Cummins-Allison Corp. v. SBM Co., Ltd., 2009 U.S. Dist. LEXIS 22114 (E.D. Tex. 2009)

(rejecting efforts to argue new invalidity contentions because party's mistakes do not represent good

cause for amending).  The New York Times has done nothing but provide timely expert opinions in

support of its previously disclosed non-infringement and invalidity contentions.  There is simply no

set of facts that would support a claim by Plaintiff that it has good cause to change its infringement

theories now.

**II.      The New York Times Would Be Prejudiced By Permitting
         The Supplemental Expert Reports To Stand.**

The parties are in the process of preparing dispositive motions and preparing for the trial of

this matter, which is set for jury selection on February 7, 2011.  Pursuant to this Court's Local

Patent Rules and this Court's procedures, the parties were to have disclosed their infringement and

invalidity theories long ago.  Indeed, one of the fundamental goals of those rules is to ensure that

parties know early in the litigation the theories on these key issues that are being pursued.  See

Saffron v. Johnson & Johnson, U.S. Dist. LEXIS 19615, * 3-4 (E.D. Tex. 2009) (patent rules are

"designed to require parties to crystallize their theories of the case early in the litigation and to

adhere to those theories once they have been disclosed.").  To allow Plaintiff to adopt new

infringement theories at this late stage of the case requires the New York Times to revisit all of its

non-infringement theories and expert reports, to re-depose Dr. Almeroth on his infringement

opinions again, to reevaluate what dispositive motions to file, and to adapt its trial plan to defend against non-infringement theories about which it has just learned.  Specifically here, the New York Times planned for the deposition of Plaintiff's technical expert with no idea that Plaintiff planned to file a supplemental report with new infringement theories.  By failing to give the New York Times any prior notice of its intention to file a supplemental report and waiting until the last possible moment before Dr. Almeroth's deposition to send the report, Plaintiff compounded the prejudice to the New York Times.  Such conduct by Plaintiff falls short of both the letter and the spirit of the disclosure requirements of the Local Patent Rules.

## **CONCLUSION**

For the foregoing reasons, the supplemental report of Dr. Almeroth should be stricken and Plaintiff should be barred from relying on any expert opinions disclosed therein at the trial of this matter.  Should the Court permit the supplemental report to stand in whole or in part, the New York Times should be granted leave to (1) file its own supplemental report and (2) take an additional deposition of Dr. Almeroth in Washington, D.C.

Dated:  November 15, 2010          _/s/ Sam Baxter_____
                                   Steven Lieberman
                                   slieberman@rfem.com
                                   Sharon L. Davis
                                   sdavis@rfem.com
                                   Brian S. Rosenbloom
                                   brosenbloom@rfem.com
                                   ROTHWELL, FIGG, ERNST & MANBECK
                                   1425 K. Street, N.W.
                                   Suite 800
                                   Washington, DC 20005
                                   Telephone: (202) 783-6040
                                   Facsimile:  (202) 783-6031

                                   Sam Baxter
                                   sbaxter@mckoolsmith.com
                                   Ada E. Brown
                                   aebrown@mckoolsmith.com
                                   McKOOL SMITH P.C.
                                   P.O. Box O
                                   104 East Houston St., Suite 300
                                   Marshall, TX 75670
                                   Telephone: (903) 923-9000
                                   Facsimile:  (903) 923-9099

                                   *Attorneys for Defendant, The New York Times
                                   Company*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 15th day of November, 2010 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_____/s/ SamBaxter_____

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), the undersigned certifies that counsel has conferred with opposing counsel in a good faith attempt to resolve this matter and that this motion is opposed.

/s/ Sharon L. Davis___
Sharon L. Davis